470 So.2d 1024 (1985)
Joseph BOARDMAN and Henry W. Boardman
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION.
No. 55967.
Supreme Court of Mississippi.
May 22, 1985.
*1027 Ben F. Galloway, Sherman Muths, Jr., Gulfport, for appellant.
Harry R. Allen, Billy W. Hood, Bryan, Nelson, Allen, Schroeder & Cobb, Gulfport, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, For the Court:

I.
This case comes to us via the lateral appellate process authorized by Rule 46 of the rules of this Court.[1] Specifically, three questions have been certified to us by the United States Court of Appeals for the Fifth Circuit,[2] as will appear below, although that court has disclaimed "any intention or desire that the Supreme Court of Mississippi confine its reply to the precise form or scope of the questions certified".[3]
*1028 Rule 46, as originally promulgated, contemplated that we would answer via certification pure questions of law. The questions presented here in no insignificant part are in the nature of law application questions  what result obtains from applying the rules of law to the facts of the case?  rather than pure questions of law as to what is the law of Mississippi on a particular point. There are presented, however, matters with respect to which we perhaps may be of help. In a spirit of cooperative federalism, and motivated further by the realization that this action arises out of an incident occurring almost six years ago and obviously needs to be brought to a conclusion as soon as possible, we will provide several insights which we hope will be of assistance to the Court of Appeals.
En route and for future reference, we will discuss our certification procedure and try to delineate more clearly what was intended by this Court in the promulgation of Rule 46.

II.
Included in the opinion of the Court of Appeals setting forth the questions certified is a statement of facts. From our review of the record it appears that there is no dispute regarding any fact material to the questions certified. In summary form, the facts are:
1. United Services Automobile Association (USAA) is an inter-insurance exchange which issues insurance policies exclusively to persons who are members of the Armed Forces of the United States. USAA was the Defendant in the United States District Court for the Southern District of Mississippi and is the Appellant in the Court of Appeals.
2. USAA was and is qualified to do business in Mississippi and in fact has issued insurance policies in Mississippi.
3. USAA issued an automobile insurance policy to Col. Henry W. Boardman, a resident of Omaha, Nebraska, for a policy period covering September 15, 1978, to September 15, 1979. Henry W. Boardman was one of the Plaintiffs in the District Court and is one of the Appellees in the Court of Appeals.
4. The insurance contract was issued from San Antonio, Texas, to Henry Boardman while Board was stationed with the United States Air Force in Omaha.
5. The policy covered a 1975 Oldsmobile, a 1974 Ford Pinto, and a 1977 Ford Pinto, all principally garaged in Nebraska.
6. The other Plaintiff-Appellee, Joseph W. Boardman, age 19, entered Mississippi State University at Starkville, Mississippi, during the Fall and Spring semesters of the 1978-1979 term.
7. During the Fall and Spring semesters of 1978-1979, Joseph was permitted by his father, Col. Henry Boardman, to operate the Pinto automobile which was insured under the policy of insurance issued by the Defendant, USAA, in the name of Plaintiff-Appellee, Col. Henry Boardman.
8. In May of 1979, Joseph Boardman, came to Gulfport, Mississippi, to take a summer job working for his paternal uncle who owns and operates Coast Materials, located in Gulfport, Mississippi.
9. Joseph Boardman drove the Ford Pinto automobile to Gulfport and operated this automobile until his father came to Gulfport and recovered this vehicle in order to deliver the automobile to Joseph's sisters who live in Cincinnati, Ohio.
10. On June 14, 1979, Henry Boardman requested USAA to remove Joseph Boardman as a named insured on the automobile insurance policy.
11. USAA effected the deletion of Joseph Boardman on June 16, 1979.
*1029 12. On June 20, 1979, Joseph Boardman purchased a used 1970 Chevrolet Caprice automobile from Jay Jay Chevrolet, Gulfport, Mississippi.
13. An application was made by Joseph Boardman for a certificate of title and, additionally, Joseph purchased a Mississippi license tag for the Chevrolet Caprice automobile.
14. The 1970 Chevrolet was never added to the insurance contract between USAA and Col. Henry Boardman, nor was any premium paid to USAA for any coverage under that or any other insurance contract.
15. On July 8, 1979, at approximately 3:00 a.m., Joseph Boardman was injured in an accident with an uninsured motorist, David Turan, in Gulfport, Mississippi, while driving the 1970 Chevrolet.
16. The Plaintiff-Appellee, Joseph Boardman, did not receive title to the Chevrolet automobile until July 9, 1979, or one day following the accident.
17. Damages sustained by Joseph Boardman as a result of the accident of July 8, 1979, include severe personal injuries which are undisputed.
18. The USAA policy afforded uninsured motorist coverage to all insureds under the policy but contained the following exclusion therefrom:
EXCLUSIONS: This policy does not apply under Part IV:
(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile... . [emphasis added]
This clause is referred to as the "owned vehicle exclusionary clause".
19. The claim for uninsured motorist benefits arising from the accident under the USAA policy in which Henry Boardman was the named insured, was denied to Joseph Boardman on the grounds that Joseph was driving an owned motor vehicle, which was not an insured vehicle under the subject policy, thereby being specifically excluded under the policy terms.
20. Nebraska law appears to uphold the "owned vehicle" exclusionary clause. See Herrick v. Liberty Mutual Fire Insurance Company, 202 Neb. 116, 118-19, 274 N.W.2d 147, 148-49 (1979); Shipley v. American Standard Insurance Company of Wisconsin, 183 Neb. 109, 111-12, 158 N.W.2d 238, 240 (1968).
21. The "owned vehicle" exclusionary clause does not preclude uninsured motorist coverage under Mississippi law. See Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767, 777-78 (Miss. 1973).

III.
The process of adjudication, both at the trial level and at the appellate level, has a three-fold nature. The point is rather elementary, but it needs restatement here.
First is the function of fact identification. The court must make a determination of, and then state, the relevant factual characteristics of the particular matter at bar.
Second, the court must make a formulation in general terms of the relevant law to be applied. This is the function of law declaration.
Obviously, the chronological ordering of the performance of the fact identification function and the law declaration function becomes a chicken-and-the-egg proposition, for the facts help determine what rules of law are relevant, and the rules of law help determine what facts are relevant.
Third, and finally, there is the function of law application. This is the job of linking up the particular with the general, the facts with the law. This is the point of ultimate decision in the case.[4]
Failure to keep these three functions distinct in mind has led to problems which we need not expound upon here. Those problems *1030 are brought to mind, however, as we confront the questions put to us by the Court of Appeals in this case, since we have been asked to advise the Court of Appeals what state's law governs the instant controversy  Mississippi or Nebraska. That is a law application question.
We recognize that the Court of Appeals is charged to ascertain just what our choice of law rules are. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477, 1480-81 (1941); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4-5, 96 S.Ct. 167, 168, 46 L.Ed.2d 3, 5 (1975). By our Rule 46 we have recognized our responsibility to supply such rules when there is substantial room for doubt regarding their content. Since state law is to be applied, we recognize and appreciate the spirit of cooperative federalism implicit in the certification practice in the Fifth Circuit whatever discordant notes may be produced in a given case. We are further motivated in the case at bar by our view that the United States District Court for the Southern District of Mississippi has misunderstood and misapplied our law.
The point is that our Rule 46 was adopted to enable us to answer questions related to the law declaration function  and that function only. This we have done in large part by the adoption of the center of gravity test. See Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968); Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968). Restatement (Second) of Conflicts of Laws, § 6, has long since been incorporated into our law. See Mitchell v. Craft, 211 So.2d at 516; Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss. 1980).
Since 1968 we have refined and applied the Craig-Mitchell center of gravity test in a variety of factual and legal contexts in McNeal v. Administrator of Estate of McNeal, 254 So.2d 521, 524-525 (Miss. 1971); Fells v. Bowman, 274 So.2d 109, 112-113 (Miss. 1973); Dunavant Enterprises, Inc. v. Ford, 294 So.2d 788, 791-792 (Miss. 1974); Vick v. Cochran, 316 So.2d 242, 245-248 (Miss. 1975); Spragins v. Louise Plantation, Inc., 391 So.2d 97, 99-101 (Miss. 1980); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 457-458 (Miss. 1983). These decisions do not answer every question that may be asked about our choice of law rules  nor, in the nature of things, could they. They do, however, provide our rules with substantial flesh.
We are not insensitive to the traditional formulation of the anti-forum shopping rationale of the Erie doctrine  that where, as here, a federal court exercises subject matter jurisdiction solely because of diversity of citizenship, the outcome of the litigation in federal court should be
substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, 2086 (1945).
The federal judiciary may proceed on the assumption that in such cases a district judge sits merely as another trial judge of the state. Beasley v. Fairchild Hiller Corp., 401 F.2d 593, 595 (5th Cir.1968). If it does so it enforces federal rules emanating from federal policies. This state's interests, though compatible, are not identical. Otherwise, we would inevitably find ourselves in the anomalous position of resolving controversies among parties wholly subject to the in personam jurisdiction of the federal court and in no jurisdictional sense before any court of this state. In answering the questions certified today we are aware that we come quite close to doing just that. The process of adjudication is not so amorphous that such is necessary as the only way the federal judiciary may achieve the laudable goals of Erie. Though subscribing to no theory of mechanical jurisprudence, we would think it ordinarily within the competence of a federal judge, given stipulated facts and eight decisions of this Court declaring and refining the applicable legal principles, to decide the case substantially the same, so far as *1031 legal rules determine the outcome of a litigation, as would the appropriate state court.
The point for the moment is simply that our interest in the protection of the integrity of the law of this state and in assuming a responsible role in cooperative federalism, all consistent with our own docket control problems, are adequately served by a restriction of our activities under our Rule 46 to the performance when properly requested of the function of declaring in general terms the controlling rules of law of the State of Mississippi.
We hope what we have said above clarifies the nature and scope of our certification process under Rule 46. We realize that the considerations stated could well lead to the conclusion that we should decline certification in this case. Indeed in all cases we retain the discretion to so decline. Still there must be some give and take, and it hardly befits our role in our constitutionally ordained enterprise of federalism to act like a stick in the mud whenever questions certified are not pure law declaration questions. In the present case, however, a combined consideration of how long this case has been dragging on since it was originally generated by the automobile accident of July 8, 1979, coupled with the desire to proceed  and to be perceived to have proceeded  in complete good faith in a spirit of cooperative federalism, we will shed such insights as we can on the questions presented.

IV.
In 1968, this state's choice of law rules were modified to embrace the "center of gravity" concept. Mitchell v. Craft, 211 So.2d 509, 512 (Miss. 1968); Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 649 (Miss. 1968). In cases where a question is presented as to whether the substantive rules of decision should be our own or those of some other state, Mitchell and Craig committed us to a determination of which state has the most substantial contacts with the parties and the subject matter of the action.
Embracing the Restatement (Second) of Conflicts of Laws, § 6, Mitchell enumerated a number of factors relevant to a choice of law determination. These include: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; (7) ease and determination in application of law to be applied. Mitchell v. Craft, 211 So.2d at 516; Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss. 1980). Evaluation and balancing of these factors has proven quite elusive.
Two nuances of our choice of law approach, important to this case, need be emphasized.
First, the law of a single state does not necessarily control every issue in a given case. We apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable. We note that Fells v. Bowman, 274 So.2d 109 (Miss. 1973) has recognized that this Court is not necessarily required
to apply the law of a single state to every facet of the case.
274 So.2d at 112. See also, Vick v. Cochran, 316 So.2d 242, 246 (Miss. 1975).
Second, we recognize that there will be cases where, applying the center of gravity doctrine, we might conclude in the first instances that the law of another state should be applied. Where that law is contrary to the deeply ingrained and strongly felt public policy of this state, however, we have recognized that we may nevertheless apply and enforce this state's positive substantive law. McNeal v. Administrator of Estate of McNeal, 254 So.2d 521, 524 (Miss. 1971).

*1032 V.
We turn now to the specific questions put by the Court of Appeals.
QUESTION NO. 1
Would Mississippi or Nebraska law apply in construing the USAA automobile insurance contract issued to Henry Boardman; or stated differently, under the Mississippi "center of gravity" test, which state would be deemed to have the most significant contacts with the insurance policy for choice of law purposes?

A.
We regard this as a general question asking which state's law would apply to the construction of this insurance contract, absent peculiar countervailing considerations. The answer is superficially easy. The contract in question was made and entered into in the state of Nebraska. Henry Boardman at the time was a resident of Nebraska and at all times relevant hereto all insureds under the contract have been residents of Nebraska. The policy covered three automobiles each of which, according to the stipulated facts before us, was "principally garaged in Nebraska". The principal location of the risks insured against was in Nebraska. Mississippi's contacts with this contract and the parties are fortuitous, arising from the fact that Joseph Boardman took a summer job in Gulfport. All of this suggests that Nebraska law should apply.
In this setting, we note that we have been asked by the Court of Appeals to comment upon the relative weight given under Mississippi law to the choice of law principles found in Sections 6, 188 and 193, Restatement (Second) of Conflicts of Laws (1971). When we engage in these considerations, our problem is seen not quite so simple, although our answer  that Nebraska law applies  remains intact.
As indicated above, this Court has expressly approved Restatement § 6 and incorporated it into the law of this state. Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss. 1980); Mitchell v. Craft, 211 So.2d 509, 515-516 (Miss. 1968). Short of authoring a treatise on the subject which would be neither helpful nor read, we will simply say that the factors enumerated in Restatement § 6 will from case to case be given such relative weight as they are entitled, consistent with the general scheme of the center of gravity test.
Restatement § 188 applies to contract cases generally. In pertinent part, it provides:
§ 188. Law Governing the absence of Effective Choice by the Parties
* * * * * *
(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement § 188 narrows the focus of § 6. Section 188 sets forth certain principles to be applied in making choice of law determinations in contract actions generally. We have never expressly addressed Restatement § 188, although it appears generally consistent with our center of gravity opinions authored in the context of actions arising ex contractu. See Dunavant Enterprises, Inc. v. Ford, 294 So.2d 788, 791-92 (Miss. 1974); Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 648-49 (Miss. 1968).
A dissertation on Restatement § 188 would be less than helpful at this *1033 point as this is an action on the uninsured motorist feature of a liability insurance contract and Restatement § 193 provides the starting point for the choice of law inquiry in such cases.
Restatement § 193 provides:
Contracts of Fire, Surety or Casualty Insurance
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
To begin with, we regard Restatement § 193 as among the choice of law rules applicable in this state. We have no prior cases construing § 193. Nevertheless, having embraced the general center of gravity test found in Restatement § 6 in Mitchell and Spragins, we perceive no reason why when it comes to actions on insurance contracts we should chart a separate course. Restatement § 193 presents a fair and enlightened set of principles and we adopt them.
The central thrust of Restatement § 193 is that the law applicable in actions on insurance contracts (other than those providing life insurance) should the law of the state the parties understood was to be the principal location of the risk. Note that the phrase "principal location" is used, not "exclusive location" or other like phraseology. This choice of wording no doubt reflects the reality that choice of law questions do not arise unless at least two states have some arguable basis for application of their law.
In the case of an automobile liability insurance policy, issued to a citizen of Nebraska covering his household, it seems inescapable, as we have indicated above, that the principal location of the risk is in the State of Nebraska. This is particularly so where, as here, the policy covers three automobiles each of which, according to the stipulated facts before us, was "principally garaged in Nebraska".
Restatement § 193 announces a general rule that, where the greater portion of the risk be in a particular state for the major portion of the insurance period, the risk's principal location is the most important choice of the applicable law. Restatement (Second) of Conflicts of Laws § 193 comment b(1971). On the other hand, comment d to Restatement § 193 recognizes that
There may also be occasions when following the issuance of the policy the principal location of the risk is shifted to some other state. In such a situation, this other state will have a natural interest in the insurance of the risk and it may be that its local law should be applied to determine at least some issues arising under the policy. In any event, application of the local law of the other state would hardly be unfair to the insurance company, at least with respect to some issues, if the company had reason to foresee when it issued the policy that there might be a shift to another state of the principal location of the risk.
The specific risk at issue here is that Joseph W. Boardman, or some other "insured" under the policy, might become involved in an automobile accident with a negligent uninsured motorist. The principal location of that risk, at least insofar as Joseph W. Boardman is concerned, was in Mississippi on July 8, 1979, and had been in Mississippi for the greater part of the immediately preceding ten months. From this point of view there would be force to the argument that under Restatement § 193 Mississippi law should furnish the rule of decision regarding the insurer's liability.
The outcome-determinative question here, however, appears to be one of coverage. The question is whether Joseph W. Boardman is an "insured" under the policy having any right to sue under the uninsured motorist coverage of his father's *1034 policy at all. This is a matter having little to do with the location of the risk. This coverage question invokes the exception to the general "principal location of the insured risk" rule of Restatement § 193. In our view the coverage issue tendered here is an issue unrelated to the insured risk, as a result of which the choice of law determination must be made by reference to the more general principles of Restatement § 6 and § 188, for here we are concerned with the meaning of the insurance contract on the question of what individuals would be covered as "insureds". When Henry W. Boardman, then a resident of Omaha, Nebraska, effected automobile insurance coverage in Nebraska through USAA, the only reasonable expectation the parties could have had was that the question of what members of the Boardman family would be protected would be determined by reference to Nebraska law.
Focusing upon the criteria of Restatement § 188(2):
(a) the place of contracting was in Nebraska,
(b) the place of negotiation of the contract was in Nebraska,
(c) the place of performance was substantially in Nebraska,
(d) the location of the subject matter of the contract, i.e., the principal location of the risks insured against, was in Nebraska (although the specific risk that Joseph W. Boardman would be involved in an accident with a negligent uninsured motorist  only one risk among the many arguably insured against by the policy  was on July 8, 1979, in Mississippi), and
(e) the residence of Henry W. Boardman was Nebraska; USAA issues its policies from San Antonio, Texas, to its insureds at their place of residence.
Eschewing application of any mathematical or otherwise mechanical process to an evaluation of the § 188 factors, we regard it as clear that they militate in favor of the application of Nebraska law to the outcome-determinative question presented in the case at bar.[5]

B.
We have considered carefully the Mississippi contacts suggested, first, in the opinion of the District Court, at pages 7-8, and second in the Boardman's brief in the Court of Appeals. In each instance a failure to perceive two important distinctions is apparent. In considering the questions certified and taking liberties to which we are entitled, we submit the following observations, hoping they will be of value.
We are not, for present purposes, concerned with the tort claim of Joseph Boardman against the uninsured motorist. No doubt that tort claim should be adjudicated according to substantive Mississippi law, although this result would not inexorably follow if Joseph Boardman and the uninsured motorist had both been residents of *1035 Nebraska. See Mitchell v. Craft, 211 So.2d 509, 514 (Miss. 1968) (Mississippi law applied to tort action by a Mississippian against a Mississippian arising out of accident occurring in Louisiana).
Moreover, we are not concerned immediately with the risk that Joseph W. Boardman would encounter a negligent uninsured motorist. Our focus rather is upon the question whether Joseph W. Boardman was one of the "insured's" under the policy entitled to claim the benefits provided thereunder, whatever those benefits might be.
Second, there are important, though because subtle often missed, distinctions between the factors that govern adjudications of questions of in personam jurisdiction, venue and choice of law. The correct pattern of analysis in each of these areas of inquiry is separate and distinct from the other two. As here, the distinction is often blurred. That in an action arising out of a tort committed in Louisiana, a Louisiana defendant may have sufficient contacts with Mississippi to render that defendant amenable to suit here does not necessarily mean that Mississippi substantive law governs the substantive rights and liabilities of the parties. Administration of Tulane Educational Fund v. Cooley, 462 So.2d 696, 701-702 (Miss. 1984). Conversely, that California has sufficient contacts so that its substantive law should govern a child support modification action does not necessarily render a New York defendant amenable to suit in California. Kulko v. Superior Court, 436 U.S. 84, 98-101, 98 S.Ct. 1690, 1699-1701, 56 L.Ed.2d 132, 145-146 (1978).
The Mississippi contacts suggested by the Boardmans are
(1) Shortly before the accident, the Plaintiff-Appellee Joseph Boardman had been a full time student at Mississippi State University.
We regard this factor as relevant to resolution of the choice of law question in this contract only insofar as it may suggest the "principal location" of the risk. Because the question at issue does not involve the scope of the risk insured against but rather who are the parties entitled to benefits under the policy, this factor is essentially meaningless. Restatement (Second) of Conflicts of Laws § 188(2) (1971).
(2) At the time of the accident, Joseph Boardman was temporarily residing in Gulfport, Mississippi, working to earn money so that he could return to Mississippi State University in the fall.
The same observations made with respect to (1) above apply here. This factor is of no substantial significance for adjudication of the coverage question presented.
(3) Approximately a week before the accident, Joseph Boardman had purchased a vehicle in the State of Mississippi and further purchased a Mississippi tag for said vehicle.
Again we fail to see how this factor informs the particular choice of law inquiry before the Court. Joseph's purchase of a vehicle in Mississippi and the purchase of a Mississippi tag are factors which simply have nothing to do with the coverage question in issue, unless, of course, Joseph is somehow suggesting that he has become a resident of Mississippi. This, of course, would produce a threshold disaster for Joseph's claim if it should be sufficient to exclude him from the Henry Boardman household.[6] For purposes of answering *1036 the choice of law questions before us today, we proceed with confidence that at all relevant times Joseph Boardman, as well as Henry Boardman, was a resident and citizen of Nebraska.
(4) The accident subject to this litigation occurred in Gulfport, Mississippi.
This could be a factor of controlling significance for in personam jurisdiction purposes under our long-arm statute. Miss. Code Ann. §§ 13-3-57 to -63 (Supp. 1984). If we were concerned with ascertaining the substantive rules of law applicable to the determination of the tort claim by Joseph Boardman against the uninsured motorist, this factor would be of enormous significance. On the coverage question preliminary to presentation of an uninsured motorist claim against USAA, however, we regard it as fortuitous and hence irrelevant.
(5) All witnesses to the accident reside in the State of Mississippi.
This factor is irrelevant to the particular choice of law inquiry at issue. On the other hand, it would be of substantial relevance if we had a venue inquiry before us and would certainly be of some importance in the determination of the in personam jurisdiction amenability question.
(6) At the time of the filing of this litigation, the Plaintiff-Appellee Col. Henry Boardman moved back to the State of Mississippi, so at the time of filing, both Plaintiffs-Appellees resided in the State of Mississippi.
The suggestion that plaintiffs can change the substantive law according to which a particular action must be adjudicated by changing their citizenship prior to filing suit simply won't wash. The choice of law inquiry must relate to the times relevant to the transaction or occurrence giving rise to the claim ab initio. Where the Boardmans lived at the time suit was filed would, however, be relevant to the subject matter jurisdictional inquiry under 28 U.S.C. § 1332 (Supp. 1985). See Baker v. Keck, 13 F. Supp. 486, 488-89 (E.D.Ill. 1936). This factor would also be relevant to a venue inquiry.
(7) At the time of the accident, the Defendant-Appellant United Services Automobile Association was qualified to do business in the State of Mississippi and in fact issued insurance policies in the State of Mississippi.
Again this is a factor wholly unrelated to our choice of law inquiry. That USAA was qualified to do business in Mississippi and in fact had issued insurance policies in Mississippi would, of course, conclusively establish its amenability to suit in this state. Where that suit arises out of a contract issued by USAA from San Antonio, Texas, to Nebraska residents, however, this factor fades into insignificance in the context of our efforts to identify the rules by which the validity of owned vehicle exclusionary clause must be determined.
(8) The Defendant-Appellant United Services Automobile Association is an inter-insurance exchange which exclusively issues insurance policies to persons who are actually members of the United States Armed Services or who have been enlisted in the Armed Forces of the United States and necessarily this Defendant-Appellant could expect its policyholders to be quite mobile and it would be quite *1037 unrealistic and unfair to restrict questions concerning coverage to the state where the insurance policy was originally issued.
Again, we have a factor quite important for in personam jurisdiction and venue purposes but wholly irrelevant for choice of law purposes.
An additional factor considered by the District Court was that the uninsured motorist tort feasor was also a resident of Mississippi.[7] Here again we have a factor influencing venue. On the other hand, we are wholly unable to see how the residence of the uninsured motorist could have anything to do with the determination of the applicable rules of substantive law to govern the contract claim by the Boardmans against USAA, nor for that matter would this factor have any relevance to the in personam jurisdiction inquiry.
The error of the District Court's analysis  its blurring of the distinctions between the choice of law inquiry and the in personam jurisdiction inquiry  is made apparent on page 8. There the District Court states:
Although the policy of insurance was issued in Nebraska, by virtue of the nature of USAA's issuance of policies to members of the Armed Forces, they could and should expect those insured persons to be transient, and, therefore, USAA could anticipate being haled into court in a foreign jurisdiction.
This notion, however, has nothing to do with choice of law questions. Rather, it derives from Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). The question in Worldwide Volkswagen was whether a nonresident defendant was constitutionally amenable to suit in a foreign jurisdiction. Whether that defendant could reasonably anticipate being haled into court in the foreign jurisdiction was held to be a factor of primary importance. Nothing in Worldwide Volkswagen or in any other case correctly analyzing the sort of question we have here suggests that anticipation of being haled into court in a foreign state is a factor determinative of choice of law questions.
The District Court continues
To require every insured who filed a claim against USAA to litigate that claim in the state in which the policy was issued, notwithstanding other relevant factors which the court should consider, would put an onorous burden on those claimants and would fly directly in the fact of the "center of gravity" test.
Again, the District Court confuses amenability to suit in a foreign forum with choice of law. For the reason recited, USAA was amenable to in personam jurisdiction in Mississippi and particularly in the United States District Court for the Southern District of Mississippi. Even if USAA had not formally qualified to do business in this state, it could have been subjected to in personam jurisdiction here. On the other hand, once USAA's amenability to suit in Mississippi is established, there is no injustice or hardship worked upon insureds by requiring them to litigate in this state according to substantive rules emanating from the state in which the policy originally issued.
QUESTION NO. 2
Would Mississippi or Nebraska law govern the validity of the uninsured motorist exclusionary clause; or stated differently, if Nebraska law is held to govern the insurance contract, does Mississippi public policy prevent the enforcement of the exclusionary clause?
As all know, this Court takes a dim view of insurer efforts to exclude cases and persons from coverage of the uninsured motorist provisions of an automobile insurance policy. See, e.g., State Farm Mutual Auto Insurance Co. v. Nester, 459 So.2d 787, 789-93 (Miss. 1984); Lowery v. State *1038 Farm Mutual Automobile Insurance Co., 285 So.2d 767, 777-78 (Miss. 1973). If this action had been brought in a Mississippi court on a contract made between Mississippi insureds and a resident or nonresident insurer acting through a Mississippi agent, there could be little doubt of the outcome.
What we have here, however, is a non-Mississippi insurer making a contract in Nebraska with a Nebraska insured whose son decides to take a summer job in Gulfport, Mississippi. We also have here an action brought in a United States court, not a Mississippi court, although the significance of this fact is not for us to determine.
This question is not, what would be the public policy of this state regarding an exclusion such as that claimed here were the insureds Mississippians. Rather, the question is whether we have a public policy which is so strong that it would override the reasonable expectation (if they thought about it) of both USAA and Henry Boardman that at the very least the coverage questions arising with respect to their contract would be governed by the law of Nebraska. We say all of this in the context of Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973), which holds that enforcement of an owned vehicle exclusionary clause comparable to that with which we are here concerned, where included in a policy issued in this state, is precluded under our Uninsured Motorist Statute. Miss. Code Ann. §§ 83-11-101 et seq. (1972).
As indicated above, one of the important principles we enforce is that no foreign state's substantive law will be enforced in courts of this state where to do so would be offensive to the deeply ingrained or strongly felt public policy of the state. In this context, note that Mitchell v. Craft, refused to enforce the Louisiana contributory negligence rule in the face of this state's longstanding comparative negligence statute. 211 So.2d at 513-16. Similarly, McNeal v. Administrator of Estate of McNeal, refused to allow enforcement in this state of the Louisiana direct actions statute in the face of the strong public policy of this state precluding intra-family tort actions. 254 So.2d at 524.
On the other hand, we have recognized that highway safety regulations of the State of Louisiana may be enforced in Mississippi, even though our rules differ from those in Louisiana. Fells v. Bowman, 274 So.2d 109, 112-113 (Miss. 1973). Moreover, we have recognized, in a guest passenger tort action, enforceability in the courts of this state of the Alabama guest statute even though Mississippi has no similar statute. Vick v. Cochran, 316 So.2d 242, 246-247 (Miss. 1975). Beyond that we have recognized that the real estate property laws of other states may be enforced in our courts. Spragins v. Louise Plantation, Inc., 391 So.2d 97, 99-100 (Miss. 1980); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 457-458 (Miss. 1983).
Further reflection suggests the need for clarification and refinement of this public policy exception to our choice of law rules. We assume that there are no rules of law extant in this state which would be contrary to public policy. An enactment of the legislature is said by definition to express the public policy of the state. We do our dead level best on this Court to assure that the common law rules emanating from our adjudication are consistent with the clear public policy of the state. We, nevertheless, have and enforce choice of law rules which from time to time allow the positive substantive law of this state to be set aside in favor of the laws of another state possessing greater contacts with the parties and the action.
Every choice of law problem, by definition, arises out of a situation where the substantive law of the competing state differs from that of this state. Because of this and because every law of this state presumably reflects the public policy of this state, we are caught in a Catch-22. The way out is recognition that some of our laws reflect public policies which are more fundamental and more inviolable than others. Some of our laws reflect public policies more strongly felt and more deeply *1039 ingrained than others. For example, Mississippi's comparative negligence and intra-family tort immunity rules reflect longstanding public policies that may be said to be fundamental. Enforcement of the contrary rules proposed in Mitchell and McNeal would be offensive to our sense of justice. On the other hand, we can hardly say a miscarriage of justice would attend enforcement of Louisiana highway safety laws when a accident occurs in Louisiana as in Fells v. Bowman, nor would injustice attend enforcement of the Alabama guest passenger statute which, even though we have not enacted a like statute, reflects a core of common sense. Easiest of all are our cases where title to properties in another state are affected and where we recognize that the property laws of the foreign state involved should be enforced for by definition the real property laws of this state have no application to real property not situated within this state.
We recognize that no clear line can be drawn between cases such as Mitchell and McNeal, on the one hand, and Fells and Vick, on the other hand. We likewise recognize that in deciding each new case a judgment call is necessary. Still it seems clear to us that the rule of law emanating from Lowery though reflective of the public policy of this state, is not one expressive of a public policy so strong that under these facts a countervailing Nebraska rule should be ignored. This is particularly so when we recall that application of the factors listed in Restatement § 188(2) point so strongly to Nebraska as the state which ought to furnish the rule of decision governing adjudication of the coverage question here presented.
When all is said and done, we are concerned with an insurance contract made and entered into in Nebraska between a Nebraska insured and nationwide insurer based in San Antonio, Texas. However public policy considerations prevailing in this state may affect an insurance contract written in Mississippi, we must in fairness recognize that we have no substantial interest in the upholding of the public policy of this state, manifest through our Uninsured Motorist statute, when the question is: who is an insured under a Nebraska insurance contract. This is particularly so in view of the fact that the party seeking to recover under the insurance contract was at the controlling time not a resident of this state. Accordingly, we advise the Court of Appeals that there is no public policy in this state that would preclude enforcement of the exclusionary clause of this insurance contract.
QUESTION NO. 3
Would Mississippi or Nebraska law govern the issue of vehicle ownership, or stated differently, would Mississippi under its "center of gravity" test consider Mississippi or Nebraska to have the most significant contacts for the purposes of establishing the law governing vehicle ownership?
As indicated above, we apply the "center of gravity" test to each issue. That other issues may be determinable by reference to Nebraska law does not necessarily mean that all issues in the case are so determinable. The rights and liabilities of Joseph Boardman and the uninsured motorist, for example, are surely determinable by reference to Mississippi substantive law.
The vehicle ownership question in this case is one of contract construction. It concerns the 1970 Chevrolet Caprice automobile purchased by Joseph W. Boardman in Gulfport, Mississippi, on June 20, 1979. The automobile was being operated in Mississippi at the time of the accident. Hence, Mississippi has the most significant contacts with regard to the vehicle ownership issue. Indeed, the owning of the vehicle appears to have occurred exclusively in Mississippi. If this action were before a court of competent jurisdiction of this state, the positive law of Mississippi would be enforced regarding the construction and application of the owned vehicle clause in the USAA automobile insurance contract.
CERTIFIED QUESTIONS ANSWERED.
PATTERSON, C.J.; WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.

*1040 APPENDIX A
IN THE UNITED STATES COURT OF
 APPEALS FOR THE FIFTH CIRCUIT
Joseph Boardman and Henry Boardman,
 Plaintiffs-Appellants,
 v.
United Services Automobile Association,
 Defendant-Appellee.
 No. 83-4310
Appeal from the United States District
 Court for the Southern District
 of Mississippi.
 (September 14, 1984)
Before BROWN, GEE and WILLIAMS, Circuit Judges.
JOHN R. BROWN, Circuit Judge.
This diversity case presents questions of Mississippi law on which Mississippi should have the final answer and for which Mississippi affords the means to obtain that answer. Guided by the great principles of federalism, we defer decision and certify decisive questions to the Supreme Court of Mississippi,[1a] pursuant to its Rule 46, adopted August 1, 1980.
Our problem  choice of law, Mississippi or Nebraska  arises out of the following situation. Plaintiff-Appellant Joseph Boardman, age 19, was a student in Mississippi during the 1978-79 school term. During the summer of 1979 he worked in Gulfport, Mississippi for his uncle. While at school, Joseph had been permitted by his father to operate an automobile which was insured under his father's insurance policy issued by defendant United Services Automobile Association (USAA). Joseph Boardman drove this automobile until his father delivered it to Joseph's sister. After Joseph no longer had the car, Henry Boardman requested USAA to remove Joseph as a named insured from his automobile insurance policy.
On June 20, 1979, Joseph Boardman purchased a 1970 Chevrolet Caprice from an automobile dealer in Gulfport, Mississippi. He applied for a title and purchased and obtained a Mississippi license tag for his car. After Joseph purchased this particular automobile he discussed with his father having it insured by USAA, but no insurance was purchased, nor was any notice of the acquisition of a new vehicle given to USAA prior to Joseph's accident on July 8, 1979. Thus, prior to the date of the accident, Joseph's 1970 Chevrolet was never added to the policy of his father, nor was any premium paid for coverage under any other insurance contract. Joseph's claim for compensation for his personal injuries arising out of an accident with an uninsured motorist was denied by USAA under the policy's exclusionary clause on the grounds that Joseph was driving a motor vehicle which Joseph solely owned, which was not an insured vehicle as defined under the USAA policy of his father.[2a]
Plaintiffs filed a motion for partial summary judgment, seeking an adjudication that there existed uninsured motorist coverage for Joseph's personal injuries under Henry Boardman's policy. They also sought an adjudication that the uninsured motorist benefits could be stacked under *1041 the terms and provisions of the automobile insurance contract for a total coverage of $60,000. Defendant USAA filed a cross motion for summary judgment seeking an adjudication that there was no uninsured motorist coverage for Joseph's accident. USAA also sought an adjudication that there could be no stacking even if the court found that the coverage existed and that the limitation on benefits available to Joseph Boardman was $10,000.00, the minimum statutory requirement of the Mississippi Safety Responsibility Act.
In its opinion, the District Court held that Mississippi law would be applied to the insurance contract under the Mississippi choice of law "center of gravity" test. The Court also held that (i) the exclusionary clause[3a] relied upon by USAA was void as a violation of Mississippi public policy; (ii) Joseph Boardman was an insured under the USAA policy; (iii) the contract of insurance existing between Henry Boardman and USAA provided uninsured motorist coverage to Joseph Boardman; and (iv) the language of the limitation of liability clause found in the policy was ambiguous, thus permitting stacking of the policy limits to provide a total uninsured motorist coverage of $60,000.
This diversity suit, filed in a Mississippi federal district court, requires that we apply the choice of law rules a Mississippi court would apply had the case been filed in a state court. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While it is clear that the Mississippi Supreme Court in choice of law situations applies and recognizes the "center of gravity" test, such a decision under that test clearly applicable to the fact situation in this case eludes us.[4a] While it is clear that under this approach, "the Court trying the action applies the law of the place which has the most significant relationship to the event and parties, or which, because of the relationship or contact with the event or parties, has the greatest concern with the specific issues with respect to the liabilities *1042 and rights of the parties to the litigation," Craig v. Columbus Compress and Warehouse Co., 210 So.2d 645 (Miss. 1968), it is precisely the significance or the lack of significance of these contacts which troubles us. We discern no clear path from the cases cited by the District Court or the parties. In addition to the unknown relative weight to be given by Mississippi to the choice influencing principles of § 6 and the relevant comments of the Restatement (Second) of Conflicts,[5a] it is also unclear how the Mississippi courts employ the more specific § 188[6a] and § 193[7a] which appear to bear on the case before us. Also at stake is the weight of the policy embodied in the Mississippi Safety Responsibility Act in helping to assure that motorists involved in accidents with uninsured motorists do not become public charges in Mississippi. Finally, depending almost certainly on the choice of law decision is the validity of the USAA policy's uninsured motorist exclusionary clause.[8]
Fully aware of Mississippi's imprimatur on § 6 we might  by piecing together some of our own deliverances and the District Court opinions dutifully following them  come up with a fair prediction of what Mississippi would hold in this case, but we do not think this a wise course. At issue is *1043 a matter of great importance to Mississippi. With facilities for positive determination so readily at hand through certification, it is for Mississippi  not us as a fortuitous momentary spokesman  to make its own policy decisions. This is especially so with respect to the ever growing number of serious automobile accidents on the state's highways involving out-of-state vehicles covered or not covered by insurance policies obtained at earlier times and places by persons in our nomadic society.
Concerned that we uphold our Erie[9] duty to apply the Substantive law of the forum state in a diversity case, we seek guidance from the one court constitutionally entitled to supply it. Indeed, as this case centers upon the strength of local Mississippi policies this course is mandated by the principles of federalism. Federal courts should hesitate to "trade judicial robes for the garb of prophet" J. Brown, Certification  Federalism in Action, 7 Cum.L.Rev. 455 (1977), when an available certification procedure renders the crystal ball or divining rod unnecessary.
Following our usual practice, we are requesting counsel to submit a joint statement of facts and a proposed certificate of questions, see West v. Caterpillar Tractor Co., 504 F.2d 967 (5th Cir.1974).[10]

APPENDIX B
IN THE UNITED STATES COURT OF
 APPEALS FOR THE FIFTH CIRCUIT
Joseph Boardman and Henry Boardman,
 Plaintiff-Appellants,
 v.
United Services Automobile Association,
 Defendant-Appellee.
 No. 83-4310
Appeal from the United States District
 Court for the Southern District
 of Mississippi.
 (October 23, 1984)
Before BROWN, GEE and WILLIAMS, Circuit Judges.
*1044 JOHN R. BROWN, Circuit Judge.
This appeal presents important issues of modern choice of law principles which are particularly appropriate for resolution by the Mississippi Supreme Court. Broadly speaking, at issue is what relative weight a Mississippi court would give  employing the Mississippi "center of gravity" test  to the choice of law principles in § 6, 188, and 193 of the Restatement (Second) of conflicts.
Following our usual practice, we requested that the parties submit a proposed agreed certificate of the issues for decision. Commendably, they have reached full agreement. Since we also agree that these are the substantive issues presented, we submit the parties' statement of facts and our issues disclaiming, however, any intention or desire that the Supreme Court of Mississippi confine its reply to the precise form or scope of the questions certified.
CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF MISSISSIPPI
TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:
It appears to the United States Court of Appeals for the Fifth Circuit that the above styled case in this Court involves questions or propositions of the law of the State of Mississippi which are determinative of the cause, and there appear to be no controlling precedents in the decision of the Supreme Court of Mississippi. This Court hereby certifies the following questions of law to the Supreme Court of Mississippi for instructions concerning said questions of law, based on the facts recited herein:

1. Style of the Case.

The style of the case in which this certificate is made is Joseph Boardman and Henry Boardman, plaintiffs/appellees v. United Services Automobile Association, defendant/appellant, being case number 83-9017, United States Court of Appeals for the Fifth Circuit, such case being an appeal from the United States District Court from the Southern District of Mississippi.

2. Statement of the Case.

1. USAA issued an automobile insurance policy to Henry W. Boardman, a resident of Omaha, Nebraska, for a policy period covering September 15, 1978, to September 15, 1979. (R 83)
2. The insurance contract was issued in Nebraska, while Henry Boardman was stationed with the United States Air Force in Omaha. (R 83)
3. The policy covered a 1975 Oldsmobile, a 1974 Ford Pinto, and a 1977 Ford Pinto, all principally garaged in Nebraska. (R 83)
4. The Plaintiff-Appellee Joseph Boardman, age 19, entered Mississippi State University of Starkville, Mississippi, during the Fall and Spring semesters of the 1978-1979 term (deposition of Joseph Boardman, page 8).
5. During the Fall and Spring semesters of 1978-1979, Joseph was permitted by his father, Col. Henry Boardman, to operate the Pinto automobile which was insured under the policy of insurance issued by the Defendant, United Services Automobile Association, in the name of Plaintiff-Appellee, Col. Henry Boardman.
6. In May of 1979, Joseph Boardman, came to Gulfport, Mississippi, directly from school to work for his paternal uncle who owns and operates Coast Materials, located in Gulfport, Mississippi (deposition of Joseph Boardman, page 9).
7. Joseph Boardman drove the Ford Pinto automobile to Gulfport and operated this automobile until his father came to Gulfport and recovered this vehicle in order to deliver the automobile to Joseph's sisters who live in Cincinnati, Ohio (deposition of Henry Boardman, page 11).
8. On June 14, Henry Boardman requested the Defendant to remove Joseph as a named insured on the automobile insurance policy (deposition of Henry Boardman, page 10).

*1045 9. USAA effected the deletion of Joseph Boardman on June 16, 1979. (R 95)
10. On June 20, 1979, Joseph Boardman purchased a Chevrolet Caprice automobile from Jay Jay Chevrolet, Gulfport, Mississippi.
11. An application was made by Joseph Boardman for title and additionally he purchased a Mississippi license tag for the Chevrolet Caprice automobile (deposition of Joseph Boardman, pages 16, 19).
12. The 1970 Chevrolet was never added to the policy of Henry Boardman, nor was any premium paid for any coverage under that or any other insurance contract.
13. On July 8, 1979, at approximately 3:00 a.m., Joseph Boardman was injured in an accident with an uninsured motorist, David Turan, in Gulfport, Mississippi, while driving the 1970 Chevrolet.
14. The Plaintiff-Appellee, Joseph Boardman, did not receive title to the Chevrolet automobile until July 9, 1979, or one day following the accident (affidavit of Henry Boardman, R 57).
15. Damages sustained by Joseph Boardman include severe personal injuries which are undisputed.
16. The claim for uninsured motorist benefits arising from the accident under the USAA policy in which Henry Boardman was the named insured, was denied to Joseph Boardman on the grounds that Joseph was driving an owned motor vehicle, which was not an insured vehicle under the subject policy, thereby being specifically excluded under the policy terms.
17. Nebraska law upholds the "owned vehicle" exclusionary clause.
18. The "owned vehicle" exclusionary clause is invalid under Mississippi law.

3. Questions to be Certified.[1b]
What relative weight would Mississippi give  applying the "center of gravity" test to the choice of law principles of § 6, 188, and 193, of the Restatement (Second) of Conflicts  to the undisputed facts of this case on the following issues.
1. Would Mississippi or Nebraska law apply in construing the USAA automobile insurance contract issued to Henry Boardman; or stated differently, under the Mississippi "center of gravity" test, which state would be deemed to have the most significant contacts with the insurance policy for choice of law purposes?
2. Would Mississippi or Nebraska law govern the validity of the uninsured motorist exclusionary clause;[2b] or stated differently, if Nebraska law is held to govern the insurance contract, does Mississippi public policy prevent the enforcement of the exclusionary clause?
3. Would Mississippi or Nebraska law govern the issue of vehicle ownership; or stated differently, would Mississippi under its "center of gravity" test consider Mississippi or Nebraska to have the most significant contacts for the purpose of establishing the law governing vehicle ownership?
The final question proposed by the parties  assuming arguendo that uninsured motorists coverage exists is aggregation allowed  has recently been decided in a case certified by our Court to the Mississippi Supreme Court. Government Employees Insurance Co. v. Brown, [446] So.2d [1002] (Miss. 1984) [No. 53,996 (February 10, 1984)] appears to permit aggregation.[3b] Accordingly, possessed of a clear answer, we do not submit this issue to the busy Mississippi tribunal.
*1046 The entire record in this case, together with copies of the briefs of the parties, our initial opinion, and the agreed certification are transmitted herewith.
CERTIFIED.
NOTES
[1] Rule 46 in its entirety provides:

RULE 46
CERTIFICATION
When it appears to the Supreme Court of the United States, or to any circuit court of appeals of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or propositions of Mississippi law. This Court may, in its discretion, decline to answer the questions certified to it. (August 1, 1980)
[2] On September 14, 1984, the Court of Appeals, 742 F.2d 847, released an opinion deciding that certain aspects of this case should be certified to this Court. A copy of this opinion is attached as Appendix A hereto.

The specific questions certified may be found in an opinion of the Court of Appeals released October 23, 1984. A copy of this opinion is attached as Appendix B hereto.
[3] This Court has heretofore from time to time rephrased certified questions so that helpful responses may be given. Walters v. Inexco Oil Co., 440 So.2d 268, 272 (Miss. 1983); see Government Employees Insurance Co. v. Brown, 446 So.2d 1002, 1003 (Miss. 1984) (quotation of the actual certified question omitted and instead the issues at stake are addressed); DeVille Furniture Co. v. Jesco, 423 So.2d 1337, 1339 (Miss. 1983) (same); cf. DeVille Furniture Co. v. Jesco, 423 So.2d 1337, 1342 (Miss. 1983) (answering a portion of certification moots remainder which is not then answered); Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010, 1020 (Miss. 1982) (same); Krebs by and through Krebs v. Strange, 419 So.2d 178, 183 (Miss. 1982) (same).
[4] This three-fold formulation is articulated in Hart & Sacks, The Legal Process: Basic Problems In The Making And Application of Law, 374-375 (Temp.Ed. 1958).
[5] In the context of uninsured motorists claims, the courts of other states have made similar choice of law determinations citing Restatement (Second) of Conflicts of Laws.

New Hampshire's Supreme Court considered the question in Travelers Indemnity Co. v. Stearns, 116 N.H. 285, 358 A.2d 402 (1976). The uninsured motorist claim was made pursuant to an insurance policy issued in Massachusetts to a Massachusetts resident. The court held that Massachusetts uninsured motorist law governed the New Hampshire action, notwithstanding the facts that the accident occurred in New Hampshire and the operator of the "other" vehicle was a resident of New Hampshire.
The Supreme Court of Kentucky considered the question in Lewis v. American Family Insurance Group, 555 S.W.2d 579 (Ky. 1977). The uninsured motorist claim was made pursuant to an insurance policy issued in Indiana to an Indiana resident. The court held that Indiana law governed the Kentucky action, notwithstanding the facts that the accident occurred in Kentucky and the uninsured motorist was a resident of Kentucky.
The New Hampshire and Kentucky applications of Restatement § 193 are wholly consistent with the view we take here. The only cases we have found suggesting a contrary view come from Louisiana and are inapposite in that they involve a construction of provisions of the Louisiana Civil Code. See Bloodworth v. Carroll, 455 So.2d 1197, 1205-1208 (La. Ct. App. 1984) (applying Louisiana law); Bell v. State Farm Mutual Automobile Insurance Company, 680 F.2d 435 (5th Cir.1982) (same).
[6] Had Joseph Boardman at the time of the accident been a citizen of Mississippi, we might perceive this matter altogether differently. In this connection, we note that in their complaint filed in the District Court the Boardmans allege  and USAA admits  that Joseph Boardman is a citizen of Mississippi. That complaint, however, was filed on May 19, 1981. The operative date for present purposes is July 8, 1979, the date of the automobile accident in question.

The Boardmans face a dilemma. To obtain the advantage of the favorable rule of law, see Lowery v. State Farm Mutual Automobile Insurance Company, 285 So.2d 767, 777-78 (Miss. 1973), they need for Joseph Boardman to be a Mississippian. To obtain coverage at all, that is, to bring Joseph within the definition of an insured within the policy, the Boardmans must insist that at the relevant time Joseph was "a resident of the same household" as his father, Henry Boardman. Since Henry at the time lived in Nebraska, Joseph would have been possessed of not inconsiderable agility to have been at once both a Mississippian and a resident of Henry's household.
Recognizing that failure to establish that Joseph is an insured under the policy is fatal under anybody's law, the Boardmans urge that Joseph was indeed a resident of Henry's household  in Nebraska. In their brief filed in the Court of Appeals on September 22, 1983, the Boardmans state, at page 6, that Henry Boardman considered his son to still be legal resident of his household and at the time of the accident Joseph still had clothes and other personal effects at his parents home in Nebraska and Joseph, in fact, used his parents' Omaha, Nebraska address as his permanent address for school purposes (deposition of Henry Boardman, page 17). Additionally, Henry Boardman provided his son Joseph with monetary support at school and during the summer before Joseph started working for his uncle at Coast Materials in Gulfport (deposition of Henry Boardman, page 29).
[7] Here we refer to the statement in the District Court's opinion, "The parties involved in the accident, including both Plaintiffs, are all residents of the State of Mississippi." (Page 7) We presume this means that the uninsured motorist was also a resident of the State of Mississippi.
[1a] See generally In Re McClintock, 558 F.2d 732, n. 2, 3, 4, and 5 (5th Cir.1977) and cases cited; J. Brown, Certification  Federalism in Action, 7 Cum.L.Rev. 455 (1977) (tracing the development of the certification doctrine and the Court's care to avoid "wearing out its welcome" by an apparent practice of ducking troublesome state law questions). Of the certification procedure, then Chief Judge Godbold wrote: "both federal and state judicial systems are the beneficiaries of a procedure rooted in cooperative federalism." American Eastern Development Corp. v. Everglades Marina, 608 F.2d 123, 125 (5th Cir.1979).
[2a] PART IV  PROTECTION AGAINST UNINSURED MOTORISTS COVERAGE J  UNINSURED MOTORISTS (DAMAGES FOR BODILY INJURY):

To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile ...
DEFINITIONS: The definitions under Part I, except the definition of "insured", apply to Part IV, and under Part IV: "insured" means:
(a) the named insured and any relative;
(b) any other person while occupying an insured automobile;
(c) any person, with respect to damages he is entitled to recover because bodily injury to which this part applies sustained by an insured under (a) or (b) above.
"insured automobile" means:
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded,
(b) a private passenger, farm or utility automobile, ownership of which is acquired by the named insured during the policy period provided
(1) it replaces an insured automobile as defined in (a) above, or
(2) the company insures under this Coverage all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of this election to make the Liability and Uninsured Motorist Coverages under this and no other policy issued by the company applicable to such automobile,
(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above, and
(d) a non-owned automobile while operated by the named insured; and the term "insured automobile" includes a trailer while being used with an automobile described in (a), (b), (c) or (d) above, but shall not include:
(1) any automobile or trailer owned by a resident of the same household as the named insured,
(2) any automobile while used as a public or livery conveyance, or
(3) any automobile while being used without the permission of the owner.
EXCLUSIONS: This policy does not apply under Part IV:
(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile ... (emphasis added).
[3a] See supra note 2.
[4a] As a partial example, the court has closely examined the following cases involving Mississippi choice of law principles for guidance in this matter: Maryland Casualty Co. v. Integrity Insurance Co., 693 F.2d 506, 511 (5th Cir.1982); Vicon, Inc. v. CMI, Corp., 657 F.2d 768 (5th Cir.1981); FMC Finance Corp. v. Reed, 592 F.2d 238 (5th Cir.1979); Blue Bird Body Co. v. Ryder Truck Rental, 583 F.2d 717 (5th Cir.1978); Bunge Corp. v. Biglane, 418 F. Supp. 1159 (S.D. Miss. 1976); Maryland Casualty Co. v. Williams, 377 F.2d 389 (5th Cir.1967); Mid-Continent Telephone Corp. v. Home Telephone Co., 319 F. Supp. 1176 (N.D.Miss. 1970); Spragins v. Louise Plantation, 391 So.2d 97 (Miss. 1980); Vick v. Cochran, 316 So.2d 242 (Miss. 1975); see Dunavant Enterprises, Inc. v. Ford, 294 So.2d 788 (Miss. 1974); Fells v. Bowman, 274 So.2d 109 (Miss. 1973); Mitchell v. Craft, 211 So.2d 509 (Miss. 1968); Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645 (Miss. 1968); Nationwide Mutual Insurance Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964).
[5a] § 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors, relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
[6a] § 188. Law Governing the absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.
[7a] § 193. Contracts of Fire, Surety or Casualty Insurance

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
[8] If Nebraska law is held to govern the insurance contract, the exclusionary clause is valid because the Supreme Court of Nebraska has clearly upheld the validity of the insurance contract's exclusionary language denying benefits for uninsured motorist coverage. Accordingly, if Nebraska law applies under the Mississippi "center of gravity" test, Joseph Boardman cannot recover for his injuries. See Herrick v. Liberty Mutual Fire Insurance Co., 202 Neb. 116, 274 N.W.2d 147 (1979). The Herrick Court held as follows:

In Shipley v. American Standard Insurance Co. of Wisconsin, 183 Neb. 109, 158 N.W.2d 238 (1968), the Plaintiff was operating an uninsured motorcycle when he was injured in a collision with another motorcycle operated by an uninsured motorist. We held that the Plaintiff could not recover under the uninsured motorist provision of a policy which insured a Chevrolet automobile owned by the Plaintiff excluded coverage for "bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured... . We held that an uninsured motorist endorsement should be interpreted in light of the statutory requirements concerning victims of negligent and financial irresponsible motorists, citing Stephens v. Allied Mutual Insurance Company, 182 Neb. 562, 156 N.W.2d 133, (1968). An overriding public policy of protecting an owner/operator who inexcusably has no applicable bodily injury liability is not presently discernible.
An insurance contract should be interpreted in accordance with reasonable expectations of the insured at the time of the contract, Stephens v. Allied Mutual, supra. Plaintiff does not assert that he had bodily injury liability coverage applicable to his motorcycle under the contract. He might expect the uninsured motorist endorsement to cover loss while he was operating his motorcycle, but such expectations are unreasonable.
The statute, of course, relates to automobile liability insurance policies. It requires that uninsured motorist coverage be included in any such policies delivered or issued for delivery in the state unless rejected by the insured. The purpose of the coverage is to protect the insured from uninsured motorists who do not have liability insurance on their vehicle. It is difficult to find a policy in the statute to protect on uninsured motorist from another uninsured motorist. This is what the Shipley case referred to when it stated: "An overriding public policy of protecting an owner/operator who inexcusably has no applicable bodily liability coverage is not presently discernible." (Emphasis added)
[9] Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[10] We point out to the Supreme Court of Mississippi, no doubt unnecessarily, that they need not feel bound in any fashion by the perimeters of the questions certified. We iterate that

[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues in the matter in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
Martinez v. Rodriguez, 394 F.2d 156, 159 n. 6 (5th Cir.1968).
[1b] We emphasize our disclaimer again, see note 10, Boardman v. United Services Automobile Association, [742] F.2d [847] (5th Cir.1984) [No. 83-4310 (September 14, 1984)] that our phrasing of the questions is not meant to restrict the supreme court of Mississippi in answering the issues as it perceives them.
[2b] The insurance policy exclusionary clause can be found in note 2, Boardman v. United Services Automobile Association, [742] F.2d [847] (5th Cir.1984) [No. 83-4310 (September 14, 1984)].
[3b] Our certification opinion is found at 675 F.2d 645 (5th Cir.1982); our disposition of Brown after Mississippi reached its decision is found at [727] F.2d [470] (5th Cir.1984) [No. 81-4241 (March 19, 1984)].