**EMPLOYERS MUTUAL CASUALTY COMPANY Plaintiffs**

v.

**LENNOX INTERNATIONAL, INC. and Heatcraft, Inc. Defendants**

**No. CIV.A. 3:03CV1308LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

June 17, 2005.

Justin Wade Sweat, Copeland, Cook, Taylor & Buxh, Ridgeland, MS, for Plaintiffs or Petitioners.

Scott P. Stolley (PHV), Stephen C. Rasch (PHV), Thompson & Knight, Dallas, TX, William N. Reed, J. Stephen Kennedy, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, for Defendants or Respondents.

*MEMORANDUM OPINION AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on cross-motions for summary judgment filed by plaintiff Employers Mutual Casualty Company and defendants Lennox International, Inc. and Heatcraft, Inc. The court has considered the parties' respective motions and responses, together with attachments and pertinent authorities, and concludes that defendants' motion is well taken and should be granted and plaintiff's motion should be denied.

This case presents an issue of insurance coverage under certain policies of liability issued by Employers Mutual Casualty Company (Employers) to Lennox International, Inc. (Lennox) with coverage dates from January 1, 1986 to January 1, 1992. The policies provided coverage for Lennox and its subsidiaries, including Heatcraft, for manufacturing facilities, warehouses, sales offices and dwellings at specifically-identified locations in thirty-one states.[1]

In December 2002, four lawsuits were filed in Mississippi state courts against Lennox and Heatcraft by a collective 110 plaintiffs who claim to have sustained bodily injury (and in some instances property

1. The policies identify manufacturing locations in Iowa, Ohio, Illinois, Louisiana, Georgia, Mississippi, Texas, Tennessee, Arkansas and North Carolina. In addition, it lists warehouses, sales offices and dwellings in some of those same states, as well as in California, Missouri, Michigan, Arizona, Minnesota, Florida, Massachusetts, Utah, Oklahoma, Virginia, Oregon, Maryland, Kansas, Pennsylvania, Wisconsin, South Carolina, West Virginia, Puerto Rico, Ney York, Nebraska, Kentucky and Alabama.

damage) as a result of exposure to certain allegedly toxic chemicals from a coil-manufacturing facility owned and/or operated by Heatcraft and/or Lennox in Grenada, Mississippi.[2] This facility was among those specifically-identified insured sites in the Employers' policy.[3] Lennox and Heatcraft tendered defense of these actions to Employers, contending that Employers is obligated under the subject policies to defend and indemnify them for the Grenada litigation. Employers initially undertook to defend the actions under reservation of rights, and filed this declaratory judgment action seeking an adjudication that it has no duty to defend Lennox or Heatcraft in the underlying actions.[4]

Because the extent of Employer's duty to defend with respect to the underlying actions depends on whether Mississippi law, or the law of some other state, namely, Iowa or Texas, applies, the present motions require, in the first instance, a choice of law determination. In fact, that is the primary issue presented by the motions.[5]

2. The lawsuits, filed in four different counties in Mississippi, are as follows: *Benobe Beck, et al. v. Koppers Indus., Inc., et al.*, Cause No. 251–03–30CIV (Cir. Ct. Hinds County, MS); *Likisha Booker, et al. v. Koppers Indus., Inc., et al.*, Cause No.2002–549 (Cir. Ct. Holmes County, MS); *Walter Crowder, et al. v. Koppers Indus., Inc., et al.*, Cause No.2002–0225 (Cir. Ct. LeFlore County, MS); *Lynete Brown, et al. v. Koppers Indus., Inc., et al.*, Cause No.2002–479 (Cir. Ct. Washington County, MS).

3. Heatcraft's Grenada facility was not listed among the insured properties in the 1986 policy, as Heatcraft was not acquired by Lennox until March 1986, some three months after that policy became effective. However, the parties do not dispute that the Grenada facility was covered under the general insuring provisions of the policy, and the facility was specifically listed in the Employers policies issued in succeeding years.

4. Although Employers initially agreed to defend Lennox and Heatcraft under reservation of rights, it appears it has since withdrawn from defense of the actions and offered to instead pay a percentage of defense costs based on claims it acknowledges are within coverage of the policies.

5. It is undisputed that under Iowa law and Texas law, the duty to defend extends to all claims if at least one claim is potentially covered by the policy. *See Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 845 (Tex.App.2004) ("[A]n insurer has a duty to defend the entire suit if there is any claim in the underlying petition that is potentially covered by the policy."); *Maxim Technologies, Inc. v. City of Dubuque*, 690 N.W.2d 896, 902 (Iowa 2005) ("[W]e have held that when 'any claim alleged against the insured can rationally be said to fall within such coverage, the insurer must defend the entire action' and doubts regarding the extent of the insured's coverage should be resolved in the insured's favor."). Under Mississippi law, however, an insurer's duty to defend applies only to covered claims and there is no duty to defend noncovered claims, unless there is no reasonable way to allocate defense costs between covered and noncovered claims. *See Farmland Mut. Ins. Co. v. Scruggs*, 886 So.2d 714, 719 (Miss.2004) ("A liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy."); *Equal Employment Opportunity Comm'n v. Southern Publishing Co., Inc.*, 894 F.2d 785, 791–92 (5th Cir.1990) (concluding that under Mississippi law, insurer has duty to defend entire action only when there is no reasonable means of prorating defense costs between covered and noncovered claims).

Employers acknowledges that some of the claims in the underlying litigation are covered under some of the policies, i.e., those claims charging negligence are covered by the policies effective from January 1, 1986 to January 1, 1988, which policies, while excluding intentional conduct, contained no pollution exclusion (unlike the succeeding policies, each of which contained an absolute pollution exclusion). Consequently, there is no dispute that under Iowa and Texas law, Employers has a duty to defend the entire underlying litigation.

Although Lennox and Heatcraft argue that Employers also has a duty to fully defend the litigation under Mississippi law since it is not

As a federal court sitting in diversity, this court follows Mississippi's choice of law rules. *See Denman v. Snapper Div.,* 131 F.3d 546, 548 (5th Cir.1998) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). Mississippi has adopted a "center of gravity" test for choice of law issues, pursuant to which the court applies the substantive law of the state that has the most substantial contacts with the parties and the subject matter of the action, which is determined by reference to the factors identified in §§ 6 and 188 of the *Restatement (Second) on Conflicts. Baites v. State Farm Mut. Auto. Ins. Co.,* 733 So.2d 320, 322 (Miss.Ct.App.1998); *Allstate Ins. Co. v. Green,* 794 So.2d 170, 180 (Miss.2001). Section 6 sets forth a number of broad factors that will typically be relevant to a choice of law determination, including

> (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; and (7) ease and determination in application of law to be applied.

*Baites,* 733 So.2d at 322 (citations omitted). "Section 188 narrows the focus of § 6 by identifying certain principles to be applied in making choice of law determinations in contract actions," *id.,* and reads in relevant part as follows:

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

In addition to these general provisions, the Mississippi Supreme Court, addressing "the relevancy and proper application" of choice of law principles in the context of insurance contracts, *id.,* has held that where the issue involves the interpretation of an insurance contract, "Restatement § 193 provides the starting point for the choice of law inquiry...." *Boardman v. United Services Auto. Ass'n,* 470 So.2d 1024, 1033 (Miss.1985) ("Restatement § 193 presents a fair and enlightened set of principles and we adopt them" and "regard [them] as among the choice of law rules applicable in this state."). Restatement § 193 provides:

> Contracts of Fire, Surety or Casualty Insurance The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

reasonably possible to allocate defense costs, their argument on this point is not particularly persuasive.

In *Boardman*, the court observed that the choice of wording in this section, i.e., its use of the phrase "principal location" (of the risk) and not " 'exclusive location' or other like phraseology," "no doubt reflects the reality that choice of law questions do not arise unless at least two states have some arguable basis for application of their law." *Id.* Thus, even if a policy insures risks located in two or more states, the "central thrust of Restatement § 193 is that the law applicable in actions on insurance contracts ... should be the law of the state the parties understood was to be the principal location of the risk." *Boardman*, 470 So.2d at 1033.

For their part, Lennox and Heatcraft maintain that since the policies at issue cover risks located throughout the United States, there is no "principal location" of the risk and § 193 is thus inapplicable. In support of its position, they direct the court to that portion of comment b to § 193, which states,

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law *provided that the risk can be located, at least principally, in a single state.* Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states. The importance of the risk's principal location will also vary somewhat from case to case. It enjoys greatest significance when an immovable is involved, such as when the risk insured against is damage by fire to a particular building. In the case of chattels, the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance. Provided, however, that the risk will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered in the choice of the applicable law, at least as to most issues. (Emphasis added).

Employers, on the other hand, focusing on comment f to § 193, takes the position that for purposes of ascertaining applicable substantive law in multiple risk policies, the policies should be treated as separate individual policies as to each risk insured thereunder. Comment f states:

> Multiple risk policies. A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state.

According to Employers, under the reasoning of comment f, the proper focus in the choice of law analysis is on the particular risk at issue in this case; and, as the

parties understood that Mississippi was obviously the principal location of the risk for Heatcraft's Grenada facility, it follows that Mississippi substantive law should apply.

A review of cases addressing these issues reveals no shortage of authority supporting both parties' positions. Courts interpreting and applying (or not applying) § 193 in cases involving insurance policies that cover risks located in multiple states have divided over the proper focus of the "location of the risk" analysis proposed by § 193.[6] Some courts, particularly in cases involving environmental contamination, have interpreted comment f broadly so that virtually any policy insuring multiple sites is treated as a separate policy as to each insured location, regardless of whether there is an identifiable single "principal" of the risk. *See, e.g., Northland Casualty Co. v. HBE Corp.,* 145 F.Supp.2d 1310 (M.D.Fla.2001) (concluding that § 193, comment f, "details the proper rule for deciding" a dispute where the policy covered multiple risk locations in several states, and thus holding that coverage of underlying claims was to be decided by the law of each separate state in which a claim arose); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,* 14 Cal. Ap. 4th 637, 646, 14 Cal.App.4th 637, 17 Cal. Rptr.2d 713 (1993) (adopting multiple risk approach of comment f, and concluding that "this is a case where in reality Johnson Controls did not obtain a single policy which it could expect could be governed by the law of one state; rather, Johnson Controls obtained separate policies which insure separate risks located in any number of states where the corporation does business"); *Chesapeake Utils. Corp. v. American Home Assurance,* 704 F.Supp. 551, 556–57 (D.Del.1989) (where policy insured sites in Maryland and Delaware, court, relying on comment f, held that Maryland law applied to the Maryland site and Delaware law to the Delaware site).

Other courts, including the Fifth Circuit, have given little or no attention to comment f, and held that § 193 is pertinent only if there is, in fact, a single state which can be identified as the "principal" location of the risks insured by a policy.[7] *See Fallon v. Superior Chaircraft Corp.,* 884 F.2d 229, 233 (5th Cir.1989) (stating that "[i]nsurance contracts that do not have a principally located risk are to be governed by § 188 of the *Second Restatement*"); *Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas,* 846 F.2d 319, 324 (5th Cir.1988)

6. Of course, when a policy covers a risk or risks located primarily in a single state, the choice of law determination would be less controversial, particularly if the risk and the policyholder are also located in that same state. Even where the risk insured is located in a single state and the insured and insurer are located in other states, the resolution would be simpler, and would ultimately depend on whether the forum state's choice of law rules favor a lex loci contractus approach or a "site specific" approach.

7. Other courts, while acknowledging comment f, have interpreted it narrowly so that a single policy may be treated as separate policies insuring separate risks only where the risk insured requires a particular statutory form and then, only as to that issue. *See, e.g., Continental Ins. Co. v. Beecham, Inc.,* 836 F.Supp. 1027, 1036 (D.N.J.1993) ("By its very terms, however, comment f is of limited scope. It applies only to policies covering risks for which a state requires a particular statutory form, typically fire insurance policies, which form will generally be incorporated into the policy," so that in cases which are "not of the ilk contemplated by comment f, the policy will not be treated as more than one policy"); *American Motorists Ins. Co. v. Stewart Warner Corp.* 2004 WL 1146707, **4–5 (N.D.Ill.2004) ("Under the *Restatement (Second) of Conflict of Laws* § 193, comment f, such multiple risk policies will typically delineate different requirements for risks in various locations based upon, for example, 'special statutory forms of the several states involved' ").

(concluding that § 193 was inapplicable because the insured risk was located in various states); *see also Combs v. International Ins. Co.,* 354 F.3d 568, 587 (6th Cir. 2004) (where a policy covers risk located in multiple states so that risks are dispersed across forum boundaries, "[t]he Second Restatement cautions against focusing on the location of the risk," which is in that scenario of limited importance); *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.,* 178 F.3d 160, 166 (3d Cir.1999) (holding that "the general site-specific rule of § 193" applies where there is a state that is the principal location of the risk, and that "a court need only consider the application of the § 6 factors when the 'insured operation or activity is predictably multistate,' that is, when the policy covers sites in many states, or when the insured risk is transient"); *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.,* 145 S.W.3d 337, 340 (Tex. App.2004) (stating that "the location of the subject matter of the contract are neither significant nor determinative in deciding which law to apply to multi-risk insurance contracts") *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 N.J. 187, 194–195, 712 A.2d 634, 637–638 (N.J.1998) (stating that when an insured operation or activity is predictably multistate, as where a single insured seeks coverage under CGL policies for environmental and toxic tort liabilities including multiple sites in different states, "the significance of the principal location of the insured risk diminishes"); *Lapham–Hickey Steel Corp. v. Protection Mutual Ins. Co.,* 166 Ill.2d 520, 527, 211 Ill.Dec. 459, 655 N.E.2d 842, 845 (1995) (where insured sought declaration regarding its right to recover defense costs associated with EPA proceedings relative to Minnesota property, court gave little weight to the fact that the property was located in Minnesota because the policy covered property located in six states, and chose instead to apply law of Illinois, where policy was issued, "to obtain a consistent interpretation of the policy").

■ While the Mississippi Supreme Court has embraced § 193, it has not specifically confronted the proper application or interpretation of that section in a case involving a multirisk/multi-state policy. In this court's opinion, however, particularly in view of the Fifth Circuit's consistent interpretation of the section as applying only where there is, in fact, an identifiable "principal location" of the risks insured under a policy, and the utter lack of any Mississippi authority suggesting a contrary interpretation, § 193 does not apply here. Indeed, while the court would acknowledge that it has been accepted by a number of courts, the fact is, the interpretation urged by Employers completely disregards the explicit requirement of § 193 that there be a "principal" location of the risk. According to Employers, where a policy insures against the risk of liability arising from an insured's activities, wherever those activities may occur, then the risk is located wherever a loss event occurs. But an analysis that simply equates location of the "risk" with the location of the occurrence that creates liability, renders the concept of "principal" location of the risk superfluous.

This point was well made in *Maryland Casualty Company v. W.R. Grace & Co.,* 332 F.3d 145 (2d Cir.2003), which involved the issue of an insurer's duty to defend for environmental claims arising from gradual pollution under insurance policies covering at least twenty-six sites in twelve states. The court rejected the insured's argument for application of the substantive law of the state where each site was located, stating,

> Grace's position defies both the law and the facts, as well as the traditional concerns of judicial economy and uniformity. The very section of the Restatement

upon which Grace places considerable reliance demonstrates the flaws in its argument. The language of § 193–applying the "law of the state" (not the "laws of the states") which the parties understood to be "the *principal location* of the insured risk" (not "all the locations of the insured risks")-suggests that the drafters of the Restatement did not intend for courts to apply the laws of more than one state to a single insurance policy. The use of the phrase "principal location" must mean that, where the insured risk is located in more than one state, courts should apply the law of the *one* state in which the parties understood the risk to be *principally* located.

*Id.* at 154. The court in *Continental Ins. Co. v. Beecham, Inc.,* 836 F.Supp. 1027, 1036 (D.N.J.1993), echoed this reasoning. There, the insurer argued that § 193 dictated application of Pennsylvania law "for the simple reason that the insured's liability in the underlying action arises from a risk located in that State." *Id.* The court rejected this argument, stating,

> Continental errs, however, in focusing on where the liability arose rather than where the risk or risks which were the subject of the contract of insurance were located. In other words, the relevant consideration is the location of the risks covered by the contract at the time the contract was entered into and throughout the term of the contract, not where any given insured risk came to fruition.

*Id. See also QSP, Inc. v. Aetna Cas. & Sur. Co.,* 1998 WL 892997, 11 (Conn.Super.1998) (pointing out that "while comment(a) to § 193 provides that ... the law selected by § 193 can determine the consequences for a liability insurer's breach of its duty to defend—neither § 188(3) nor comment (a) to § 193 inform the predicate factual question for invoking § 193 rather than § 188, whether there was a 'state which the parties understood was to be the principal location of the insured risk during the term of the policy ...' ").

The court in *Maryland Casualty,* 332 F.3d 145, further stressed that the case before it did not concern the insured's liability for the pollution that occurred at the waste sites and did not involve the question of whether the victims of the pollution would be compensated. Rather, the court viewed it as "merely a dispute over who-Grace [or its insurer]-must bear the cost of defending Grace against the various environmental actions." *Id.* (stating, "the interest [of a state in which a waste site is located] diminishes when the question is not whether someone will or can pay for the cleanup but rather who will pay"). In sum, the court observed,

> [T]he dispute concerns nothing other than the rights and obligations of the parties to insurance contracts with which New York has the most significant contacts. Thus, New York's interest in this litigation is superior to that of any state.

*Id.*

In the case of the policies at issue here, there is no question but that when the policies are viewed as a whole, as they should be, there is no "principal" location of the risks insured, or if there is, it is a state other than Mississippi. Again, the policies identify thirty-one separate insured locations, the majority of which are in Texas, and only one of which is in Mississippi, that being the Grenada Heatcraft plant. In addition, this case does not involve actual liability for the alleged contamination, but rather involves only the rights and duties of the parties under the terms of the insurance contract itself.

■ In this vein, while the Mississippi Supreme Court purports to have adopted § 193, that court has repeatedly held that where the issue for decision involves interpretation of an insurance contract, the

choice of law is to be made by reference to § 188, rather than § 193, since in such cases, the "location of the risk" is not especially relevant. For example, in *Boardman, supra,* the court commented that because "[t]he outcome-determinative question ... appear[ed] to be one of coverage," i.e., the question of whether a certain individual qualified as an insured under the policy, that question had "little to do with the location of the risk," and was thus an "exception" to the general "principal location of the insured risk" rule of § 193. 470 So.2d at 1033–34.

Employers maintains that this "exception" recognized in *Boardman* is limited to cases where the question is whether a claimant is an insured under the policy. It is clear, however, that the Mississippi Supreme Court's disregard of the "location of the risk" as of particular relevance to coverage issues is not so limited. The questions in *Association of Trial Lawyers Assur. v. Tsai,* 879 So.2d 1024, 1028 (Miss. 2004), were whether the insurer had a duty to defend, whether it breached that duty, and whether it was estopped from asserting a policy defense. The insured under the policy in question was a Mississippi attorney who had been sued in Mississippi for malpractice in a transaction in Mississippi. The Supreme Court, citing *Boardman,* and without further discussion, declared that it "agree[d] with the circuit court that this case is governed by Illinois substantive law ... because the insurance policy in question was issued in Illinois, and this case involves questions of interpretation of the policy." [8] Likewise, in *Broadhead v. Hartford Casualty Ins. Co.,* 773 F.Supp. 882, 892–893 (S.D.Miss.1991), this court specifically found that § 188 applied under Mississippi's choice of law rules "when the issue concerns coverage under the policy," and that Texas substantive law thus applied to determine scope of the insurer's duty to defend since the policies at issue were prepared, executed and paid for in Texas. *See also O'Rourke v. Colonial Ins. Co.,* 624 So.2d 84, 86–87 (Miss.1993) (with respect to the question of coverage, and in particular whether coverage was barred by an owned-vehicle exclusion, "the fact that the accident occurred in Mississippi was 'fortuitous and hence irrelevant' ").

When § 193 cannot be used to resolve the choice-of-law issue, the court determines which state has the most significant relationship to the matter in issue by employing the factors set forth in §§ 188 and 6 of the Restatement, and the place of contracting, the place of negotiation, and the domicile, residence, nationality, place of incorporation, and place of business of the parties become the factors to determine which law applies. And as indicated, of those factors, the Mississippi Supreme Court has consistently held that the most important contacts in coverage cases are those related to contract negotiation, execution and payment.

The evidence here reflects that Employers is an Iowa corporation with its principal place of business in Iowa. Although Lennox is presently a Delaware corporation with its principal place of business in Texas, prior to 1991, including at the time the subject policies were issued, Lennox was an Iowa corporation. Heatcraft is a Mississippi corporation with its principal place of business in Texas. Al-

8. The Fifth Circuit has applied a similar analysis based on Texas law. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202, 205 (5th Cir.1996) (applying Texas conflicts law to determine whether insured had a duty to defend and indemnify, court held that "when the issues of a case require the construction and application of insurance policies, ... the relevant inquiry is what contacts the state has with the insurance dispute, and not with the underlying lawsuit").

though the policies were brokered through the Chicago, Illinois office of Marsh & McLennan, Marsh & McLennan negotiated the policies with Employers in Iowa, and Employers issued the binders from Iowa. Payment of the premiums was made by Lennox through the broker to Employers in Iowa. Moreover, whereas the policies cover a single site in Mississippi, they cover thirteen sites in Texas and four sites in Iowa. From these facts, the court concludes that both Iowa and Texas have a greater relationship to the parties and their insurance contract than does Mississippi, and thus the court concludes that Mississippi substantive law does not apply to the issue presented.[9]

Therefore, it is ordered that Employers' motion for summary judgment is denied. It is further ordered that the motion of Lennox and Heatcraft for summary judgment is granted.

9. The parties have not sought a definitive determination as to whether Texas or Iowa law would apply if Mississippi law is held not to apply, for between those states' laws, there evidently is no conflict with reference to the issue presented.