# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-60023

HARTFORD UNDERWRITERS INSURANCE COMPANY

Plaintiff-Appellant

v.

FOUNDATION HEALTH SERVICES INC, formerly known as Lunch Inc

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:05-CV-50

Before KING, DeMOSS, and SOUTHWICK, Circuit Judges.

DeMOSS, Circuit Judge:

Hartford Underwriters Insurance Company ("Hartford") appeals the district court's order denying Hartford's motions for declaratory judgment and partial summary judgment. In denying Hartford's motions and dismissing Hartford's suit, the district court held that the substantive law of Mississippi, not Louisiana, applies to a dispute between Hartford and Magnolia Healthcare, Inc. ("Magnolia") involving reimbursement for attorney's fees. After conducting our own choice of law analysis, we agree with the district court that Mississippi law applies.

## BACKGROUND AND FACTS

Foundation Health Services, Inc. ("Foundation") is a Louisiana non-profit corporation that, through its subsidiaries, owns and operates healthcare facilities and nursing homes in seven states. One of its wholly-owned subsidiaries is Magnolia, which itself owns and operates four nursing homes in Mississippi. Magnolia is a Mississippi corporation but maintains its corporate offices in Louisiana.

In 1997 and 1998, Hartford issued several insurance policies to Foundation's predecessor, Lunch, Inc. ("Lunch").[1] The policies provided liability coverage for the operation of each Lunch subsidiary, including Magnolia. The insurance policies named Lunch as the insured, and despite Hartford's arguments to the contrary, the record confirms that the policies named Magnolia as an additional insured. The insurance policies also separately identified the location of Magnolia's four nursing homes by their Mississippi address. It is undisputed that Lunch, and not Magnolia, applied for and procured the policies and that the policies were delivered to Lunch in Louisiana, where Lunch paid the policy premiums.

While the insurance policies were in effect, Magnolia was sued in fourteen civil actions in Mississippi state court, with each suit arising out of Magnolia's operation of its nursing home business in Mississippi. Pursuant to its duties under the insurance policies, Hartford defended Magnolia in each case, but did so under a reservation of rights.[2] Magnolia also independently retained counsel

---

[1] Hartford Underwriters Insurance Company, the entity that is a party to this suit, issued only two of the policies listed in Magnolia's original complaint, #42UUVBF2253 and #42UUVCZ2741. However, Hartford does not dispute that those policies insured the underlying risks and triggered the duty to defend that is at issue in this appeal.

[2] When an insurer provides a defense for an insured under a reservation of rights, the insurer defends the insured "while at the same time reserving the right to deny coverage in [the] event a judgment is rendered against the insured." Moeller v. Am. Guar. & Liab. Ins. Co., 707 So.2d 1062, 1069 (Miss. 1996); see 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 202:38 (3d ed. 2007) ("A 'unilateral reservation of rights' is a notice given by the insurer that it will defend but reserves all rights it has based on noncoverage under the

in the fourteen lawsuits. Thereafter, Magnolia sought reimbursement from Hartford for legal fees incurred by its independently-retained counsel. Hartford declined to pay the fees.

Magnolia and Foundation then filed suit against Hartford in Mississippi state court on October 22, 2004, asserting breach of contract and various tort claims in an effort to recover the legal fees incurred by its independently-retained counsel. On December 3, 2004, Hartford removed to federal court in the Northern District of Mississippi on the basis of diversity. However, prior to learning of the Magnolia/Foundation suit, Hartford filed its own action against Foundation in Louisiana federal court on October 29, 2004. Hartford's suit sought a declaration that it had no duty to pay the legal fees incurred by Magnolia's independently-retained counsel. Pursuant to Foundation's motion, the Louisiana federal court transferred Hartford's suit to the Northern District of Mississippi where the suit brought by Magnolia and Foundation was pending.

Following the transfer, the district court considered the two cases together, although they have never been consolidated. The district court limited discovery in both cases to the issue of which state's law should apply to the attorney's fee dispute. Eventually Hartford filed a motion for declaratory judgment and partial summary judgment in both cases, and Foundation and Magnolia moved for partial summary judgment in the case they originally filed. On November 17, 2006, the district court filed a written order concluding that Mississippi law applied to the dispute. Consequently, the court granted partial summary judgment to Foundation and Magnolia, and denied Hartford's motions in each case. In the case originally brought by Hartford, the denial of Hartford's motion for declaratory judgment resulted in a final judgment dismissing that case. Hartford has timely appealed the dismissal and we presently consider that

policy.").

appeal here. The appeal in the case originally brought by Magnolia and Foundation, case number 07-60010, is disposed of in a separate opinion.

## DISCUSSION

### A. Standard of review and choice of law principles

"This Court reviews questions of law, including conflicts of law questions, de novo and district court factual determinations for clear error." Abraham v. State Farm Mut. Auto. Ins. Co., 465 F.3d 609, 611 (5th Cir. 2006). We also review de novo the dismissal of a declaratory judgment action when the dismissal is based on a question of law. Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp., 509 F.3d 216, 220 n.8 (5th Cir. 2007).

Magnolia is seeking reimbursement for attorney's fees incurred by its independently-retained counsel in suits where Hartford defended Magnolia under a reservation of rights. Mississippi law requires an insurer defending an insured under a reservation of rights to provide the insured with independent counsel because of the "built-in" conflict that is created. Twin City Fire Ins. Co. v. City of Madison, 309 F.3d 901, 905 (5th Cir. 2002) (applying Moeller v. Am. Guar. & Liab. Ins. Co., 707 So.2d 1062, 1069 (Miss. 1996)). Conversely, Louisiana law does not require an insurer to furnish independent counsel merely because it defends an insured under a reservation of rights. See Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc., 335 F.3d 353, 356 (5th Cir. 2003) (applying Louisiana law); see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., v. Circle, Inc., 915 F.2d 986, 991 (5th Cir. 1990) ("[A]n insurer does not automatically breach its duty to defend merely because it reserves the right to deny coverage under the policy.") (applying Louisiana law).[3] Because Foundation

---

[3] In Louisiana, separate counsel is required only when a concurrent conflict of interest is shown to exist. See, e.g., Belanger v. Gabriel Chems., Inc., 787 So.2d 559, 565 (La. Ct. App. 2001) (requiring separate counsel when insurer represented insured but denied coverage); Nat'l Union, 915 F.2d at 991 (requiring insurer to provide separate counsel under Louisiana law when the insured can establish that counsel provided by the insurer was "objectively

would have a viable cause of action to recover the attorney's fees under Mississippi law, but not under Louisiana law, we must conduct a choice of law analysis to determine which law applies. See Zurich Am. Ins. Co. v. Goodwin, 920 So.2d 427, 432 (Miss. 2006) ("Choice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation."); see also Chapman v. Thrasher Trucking Co., 729 F. Supp. 510, 510 (S.D. Miss. 1990) (considering a choice of law analysis necessary only for conflicts "hav[ing] a significant effect on the outcome of the case").

Sitting in diversity, we apply the choice of law rules of the forum state to determine which state's substantive law applies. In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007). The forum state, Mississippi, resolves choice of law issues by applying the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. See Zurich, 920 So.2d at 433-34.

Regarding the first step, we conclude that this issue is substantive in nature. "[T]he law of the forum determines whether an issue in the action is substantive or procedural in nature." 1A C.J.S. Actions § 41. In Mississippi, "few laws are classified as procedural" and for choice of law purposes the Mississippi Supreme Court has labeled as procedural only rules of evidence and procedure, statutes of limitations, and awards of attorney's fees and interest. See Zurich, 920 So.2d at 433. While this dispute generally involves reimbursement for attorney's fees, the more precise issue is whether an insurer must provide an insured with independent counsel when defending them under a reservation of rights. Because resolution of this issue determines whether Foundation "has a viable cause of action," and not merely whether a party is entitled to attorney's

_____

inadequate").

fees for prevailing in a particular case, the issue is substantive. See Hancock v. Watson, 962 So.2d 627, 629 (Miss. Ct. App. 2007); see also Zurich, 920 So.2d at 433.

Second, the parties assert, and we agree, that this issue is contractual in nature. Finally, regarding the third step, Mississippi courts seek to determine the "center of gravity" of a dispute and apply "the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues . . . ." Zurich, 920 So.2d at 433 (internal quotation marks omitted). In applying this approach, Mississippi "has embraced the Restatement (Second) of Conflict of Laws." Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214, 230 (5th Cir. 2005). Three Restatement sections are potentially relevant here: sections 6, 188, and 193.

### B. Application of the relevant Restatement sections

Magnolia urges us to analyze this case under section 193, which applies to all kinds of insurance contracts, except those providing life insurance. See Boardman v. United Servs. Auto. Ass'n, 470 So.2d 1024, 1033 (Miss. 1985). Section 193 states that the rights created by such a contract

> are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193. "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." Id. cmt. b. However, "where the policy covers a

group of risks that are scattered throughout two or more states" the "location of the risk has less significance." Id.

It is undisputed that the insurance policies at issue cover risks in seven states. Section 193 comment f allows separate consideration of risks for the purpose of determining the principal location of the insured risk when a policy insures multiple risks in several states that require a special statutory form to be incorporated into the policy. Id. cmt. f. Relying on this provision, some courts treat "virtually any policy insuring multiple sites . . . as a separate policy as to each insured location, regardless of whether there is an identifiable single 'principal' of the risk." Employers Mut. Cas. Co. v. Lennox Int'l, Inc., 375 F. Supp. 2d 500, 505 (S.D. Miss. 2005) (collecting cases). Although it is not clear how Mississippi would interpret comment f, this Court has held that "§ 193 is pertinent only if there is, in fact, a single state which can be identified as the 'principal' location of the risks insured by a policy." Id. For example, in Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas Inc., we refused to separately consider each insured risk and held that "[s]ection 193 is inapplicable here because the insured risk was located in various states: Texas, Oklahoma, and Louisiana." 846 F.2d 319, 324 (5th Cir. 1988).

Without controlling authority to the contrary, we feel compelled to apply the plain language section 193, which speaks in terms of one principal location of the insured risk. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193. It is inescapable that the policies at issue insure risks in several states. Cf. Employers Mut., 375 F. Supp. 2d at 507 ("[T]here is no question but that when the policies are viewed as a whole, as they should be, there is no 'principal' location of the risks insured."). Thus, the location of the insured risk has "less significance" and section 193 does not compel us to apply Mississippi law. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b.

Next, Restatement section 188 provides that the law that "has the most significant relationship to the transaction and the parties" should be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188. Section 188 lists several factors to be considered in determining which state has the most substantial relationship to the parties and the dispute:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Id. The Mississippi Supreme Court has not applied this test in a mathematical or mechanical fashion, and uses the factors as a "practical" way to determine the center of gravity of a contract issue. See Zurich, 920 So.2d at 435; see also Boardman, 470 So.2d at 1034. Importantly, these factors are to be applied to "determine the law applicable to an issue" and the contacts "are to be evaluated according to their relative importance with respect to th[at] particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (emphasis added); see Zurich, 920 So.2d at 433 (applying the law that "has the greatest concern with the specific issues" raised); see also Boardman, 470 So.2d at 1033-34 (focusing on the contacts only as they related to the "outcome-determinative question"). The particular issue to be decided here is whether Hartford must provide independent counsel for Magnolia when defending Magnolia under a reservation of rights in Mississippi state court.[4] With that specific issue in mind, we consider the relevant factors.

---

[4] The duty to provide independent counsel includes the requirement that an insurer reimburse an insured for the cost of independently-retained counsel. Moeller, 707 So.2d at 1069.

Regarding the place of contracting, we agree with Hartford and the district court that the place of contracting was most likely Louisiana. Further, the contract negotiation, to the extent there was any, likely occurred in Louisiana. Courts in Mississippi and elsewhere have recognized that these factors can be the most relevant in determining the law applicable to contract formation disputes and disputes involving pure contract interpretation, including those concerning an insurer's duty to defend. See Employers Mutual, 375 F. Supp. 2d at 508 (duty to defend case); see also Sandefer Oil & Gas, Inc., 846 F.2d at 324-25 (finding the place of negotiation and place of contracting particularly important to the issue of determining coverage under a policy); see also Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 674 F. Supp. 354, 356 (D.D.C. 1987) (concluding, in a dispute over what law determined the effect of an insured's failure to disclose pending litigation when applying for insurance, that the place of negotiation and formation of the contract was paramount).

We recognize that the place of contracting and place of negotiation are often relevant to disputes involving contract interpretation. Further, we acknowledge that, to some extent, whether Hartford has a duty to provide independent counsel to Magnolia is related to the scope of Hartford's contractual duty to defend. However, this case is different from the typical contract interpretation case. Typically, a duty to defend provision can be interpreted without reference to where the underlying "defending" is taking place, because the task of pure contract interpretation merely requires the court to ascertain the parties' intent from the language of the contract itself and, at times, the circumstances surrounding formation of the contract. See One South, Inc. v. Hollowell, 963 So.2d 1156, 1162 (Miss. 2007) (discussing contract interpretation principles). This case is different because the issue of whether Hartford owed a duty to provide Magnolia with independent counsel is closely connected to the court where the "defending" took place. The court where a case is tried has a

substantial interest in preventing conflicts of interest. In other words, the court where a claim is tried has little interest in whether an insurer's duty to defend is triggered under an insurance contract, but it does have a significant interest in whether independent counsel is provided to avoid a conflict of interest. See Moeller, 707 So.2d at 1071. Thus, although the critical issue is, in a broad sense, related to interpretation of an insurance contract, we find that the place of negotiation and contracting are not of primary importance in determining the law to be applied to this narrow issue.

Considering the place of performance factor, the performance required by these insurance contracts was the payment of premiums by Foundation for certain insurance coverage to be provided by Hartford, which included the duty to defend suits brought against the insureds. Foundation's performance may have occurred in Louisiana where it paid the policy premiums, but Hartford's performance, at least as relevant to the specific issue presented here, occurred in Mississippi where it defended Magnolia in fourteen lawsuits under a reservation of rights. We find this to be the salient factor in our analysis and find it helpful to distinguish several similar types of cases.

First, when an insurer's performance is limited to the payment of policy proceeds, the place where those proceeds are to be paid is often ignored or simply not considered the place of performance. See Zurich, 920 So.2d at 436; see Houston Cas. Co. v. Certain Underwriters at Lloyd's London, 51 F. Supp. 2d 789, 797 (S.D. Tex. 1999) ("[The insured's] obligation under the parties' agreement was to pay a premium; the [insurer's] obligation was to indemnify certain losses. Where the losses occurred did not affect either obligation."). The rationale is that when the performance is limited to payment of proceeds, the place where the payment is made "seems, in truth, of no particular consequence." Houston Cas. Co., 51 F. Supp. 2d at 797. However, in this case, Hartford's relevant performance was its defense of Magnolia in Mississippi state court. The location

of that performance is relevant because it implicates Mississippi's Moeller rule, requiring provision of independent counsel for litigation in Mississippi courts. See Moeller, 707 So.2d at 1071.

Second, courts interpreting a provision in an insurance contract often do not find it necessary to look to the place where the underlying conduct occurred. See, e.g., Zurich, 920 So.2d at 436. For example, in Zurich the relevant issue required interpretation of an insurance policy to determine an insurer's limit of liability. Id. at 431. The underlying contact with Mississippi was an automobile accident, and the Mississippi Supreme Court held that this contact was "fortuitous" because it was not "specifically relevant to the true dispute" concerning policy limits. Id. at 437. Similarly, in Boardman v. United Automobile Ass'n, the relevant issue was whether an insurance policy provided coverage for the plaintiff as an insured under the policy. 470 So.2d at 1033-34. To decide these cases, the Mississippi Supreme Court was merely required to interpret the insurance policies, and the location of the events giving rise to the dispute was irrelevant to that task. See, e.g., id. at 1034 ("We are not, for present purposes, concerned with the [underlying] tort claim.").

Unlike Zurich and Boardman, the location of the conduct giving rise to this dispute is relevant to determining whether Hartford owed a duty to provide independent counsel. As mentioned, the duty to provide independent counsel when defending under a reservation of rights in Mississippi state courts is directly related to Mississippi's interest in preventing conflicts of interest in litigation. Because this issue is closely connected to Mississippi courts and policy, the fact that the underlying suits were litigated in Mississippi courts is not merely "fortuitous," it is an important factor in determining which state has the most substantial relationship to the dispute. See Zurich, 920 So.2d at 436.

Considering the other section 188 factors to the extent that they are relevant here, we conclude that they do not clearly favor either party. The

location of the subject matter of the contract, sometimes interpreted as having the same meaning as section 193's "principal location of the insured risk,"[5] is not particularly relevant to the narrow issue presented. The risks are located in seven states, and the fact that some risks are located in Mississippi is only relevant to the extent that it required Hartford to defend suits in Mississippi state courts, a factor discussed above. Regarding the domicile, residence, nationality, place of incorporation and place of business of the parties, we do not find these factors particularly helpful in deciding whether Hartford had a duty to provide independent counsel when defending Magnolia under a reservation of rights in Mississippi state court.

In sum, giving more weight to the place of performance than the other factors because of its special relevance to the narrow issue presented, we find that section 188 favors application of Mississippi law. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (allowing consideration of the factors "according to their relative importance" to the issue presented). Thus, a "de facto presumption" arises that Mississippi law applies, and we next determine whether that presumption is rebutted by applying the principles of Restatement section 6. See Zurich, 920 So.2d at 434 n.2.

Mississippi courts look to section 6 of the Restatement to consider the "state policy interests" involved. Id. Section 6 states in relevant part:

---

[5] Mississippi appears to have adopted this approach in Boardman. See Boardman, 470 So.2d at 1034. In discussing the section 188 factors, the Boardman court referred to "the location of the subject matter of the contract, i.e., the principal location of the risks insured against." Id. Other courts have expressly recognized the similarity between the two sections. See, e.g., Ohayon v. Safeco Ins. Co. of Ill., 747 N.E.2d 206, 211 (Ohio 2001) ("The principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors—the location of the subject matter of the contract.") (emphasis omitted); see also Hartford Accident & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 293 (Ind. Ct. App. 1997) (similar).

[T]he factors relevant to the choice of the applicable rule of law include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. "[T]he factors enumerated in Restatement § 6 will from case to case be given such relative weight as they are entitled, consistent with the general scheme of the center of gravity test." Boardman, 470 So.2d at 1032. In this vein, the Mississippi Supreme Court has stated that "no foreign state's substantive law will be enforced in courts of this state where to do so would be offensive to the deeply ingrained or strongly felt public policy of the state." Id. at 1038. Here, we find that the needs of the interstate system, the relevant policies of the forum, and the justified expectations of the parties are the most apposite.

First, regarding the needs of the interstate system, Hartford cites to Daley v. American States Preferred Insurance Co., for the proposition that "deference to sister state law in situations in which the sister state's substantial contacts with a problem give it a real interest in having its law applied, even though the forum state also has an identifiable interest, will further the goal of harmonious relations between the states." 587 N.W.2d 159, 165 (N.D. 1998) (quotation marks and alterations omitted). While this general statement is uncontroversial, it is

13

also unhelpful in assisting our decision because it is Mississippi, not Louisiana that has the more substantial contacts to this particular issue under section 188. Daley also recognized that an important consideration is whether the application of one state's law would "manifest disrespect for [the other state's] sovereignty." Id. The application of Mississippi law to an issue involving conflicts of interest in Mississippi courts does not manifest a disrespect for Louisiana's sovereignty, but the failure to apply Mississippi law in this context could be viewed as an affront to Mississippi's sovereignty.

Considering the relevant policies of the forum state, in Moeller the Mississippi Supreme Court articulated the requirement that insurers must provide independent counsel to insureds when defending them under a reservation of rights. See Moeller, 707 So.2d at 1071 ("[I]n such a situation, not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense."). The court cited its concern that "[a] law firm which cannot be one hundred percent faithful to the interests of its clients offers no defense at all." Id. Further, the Moeller court recognized that "[t]here is no higher ethical duty in the legal profession than complete absolute fidelity to the interest of the client." Id. (quoting State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins. Co., 394 So.2d 890, 894 (Miss. 1981)). Further, it is undeniable that the Moeller rule is grounded in conflict of interest considerations found in the Mississippi Rules of Professional Conduct. See MISS. RULES OF PROFESSIONAL CONDUCT 1.7; Madison County v. Hopkins, 857 So.2d 43, 56-57 (Miss. 2003) (McRae, P.J., dissenting) (describing the conflict present in the Moeller context as an "obvious illustration" of representation that is "repugnant to the mandates and principles of the Mississippi Rules of Professional Conduct").

Moeller states Mississippi's position on an issue that implicates Mississippi policy interests in preventing conflicts of interest in litigation. We

agree that this policy consideration weighs in favor of applying Mississippi law here. We emphasize that this type of policy concern is not present in every choice of law case. As Boardman recognized, "some of our laws reflect public policies which are more fundamental and more inviolable than others. Some of our laws reflect public policies more strongly felt and more deeply ingrained than others." Boardman, 470 So.2d at 1038-39.

We note that this case is distinguishable from the Mississippi Supreme Court's recent decision in Zurich, in part because different public policy interests are involved.[6] In Zurich, a commercial truck driver was involved in a multi-vehicle accident on a Mississippi highway. 920 So.2d at 431. The driver was employed by an Iowa company who was insured by Zurich. Id. The issue was whether the insurance policy limits of $1 million "per accident" applied separately to each person injured by the driver's negligence. Id. at 430-31. The Mississippi plaintiffs argued that Mississippi had a greater interest in the outcome because Mississippi citizens would be directly effected. Id. at 436. In rejecting that argument the Mississippi Supreme Court stated that "the fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state." Id. By contrast, Mississippi's interest here involves the power of its courts to enforce its conflict of interest rules in litigation in order to protect parties and the judicial process.

Lastly, the justified expectations of the parties also favor application of Mississippi law. Contrary to Hartford's contention, Magnolia was justified in expecting that Mississippi law would determine whether they were entitled to independent counsel in suits brought against them in Mississippi state court. Relatedly, the record confirms that Hartford was aware that Magnolia's nursing

---

[6] As discussed supra, Zurich is also distinguishable because it involved pure contract interpretation.

homes were located in Mississippi, and they are identified by address in the relevant policies. Hartford should have reasonably expected that when it insured Magnolia's nursing homes in Mississippi, suits may be filed against Magnolia in Mississippi, triggering Hartford's duty to defend in Mississippi state court. Further, it would have been reasonable for Hartford to expect that the Moeller rule would apply when it defended Magnolia under a reservation of rights in Mississippi state court. Thus, we find these factors favor application of Mississippi law.

Based on our analysis of the relevant Restatement factors, we conclude that Mississippi law governs this dispute. Applying Restatement section 188, the place of Hartford's relevant performance was Mississippi, where it defended Magnolia under a reservation of rights. This "place of performance" factor is entitled to substantial weight because of the close relationship between Hartford's performance and Mississippi's substantial interest in avoiding conflicts of interest in its courts. Restatement section 6 strengthens the presumption that Mississippi law applies, because the Moeller rule implicates Mississippi policy interests, applying Mississippi law to this dispute is consistent with the needs of the interstate system, and is in accord with the reasonable expectations of the parties. Given these considerations, Mississippi, and not Louisiana, has the most significant relationship to this dispute. See Zurich, 920 So.2d at 433. We emphasize that we are only determining the law applicable to this narrow issue, and other disputes arising out of these insurance policies may be governed by the law of another state. See Boardman, 470 So.2d at 1031 ("We apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable.").

CONCLUSION

For the foregoing reasons, we find that Mississippi law applies to this dispute and we AFFIRM.

AFFIRMED.